IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CARLETON W. ROGERS, | } | |
| TDCJ-CID NO.1348848, | } | |
|     Plaintiff, | } | |
| v. | } | CIVIL ACTION G-07-330 |
| TDC, *et al.*, | } | |
|     Defendants. | } | |

OPINION ON PARTIAL DISMISSAL

Plaintiff Carleton W. Rogers, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint pursuant to 42 U.S.C. §1983, seeking equitable relief on grounds that the Texas Department of Criminal Justice ("TDCJ"), medical personnel employed at the Ramsey I Unit by the University of Texas Medical Branch ("UTMB"), Lt. R.J. Gilbert, and Lt. E. Rodriguez violated his constitutional rights. *Rogers v. TDC*, Civil Action No.4:07cv1909 (S.D. Tex. June 22, 2007) (Docket Entries No.1, No.6). In mid-June, 2007, Houston District Judge Sim Lake ordered the case transferred to the United States District Court in Galveston, Texas. *Id.*, Docket Entry No.8. The case was transferred and assigned the present number. Pursuant to General Order No.2007-10, the case was reassigned to United States District Judge Melinda Harmon. (Docket Entry No.43). Plaintiff filed two responses to the Court's Order for More Definite Statement, entered January 10, 2008. (Docket Entries No.57, No.60). For the reasons to follow, the Court will dismiss plaintiff's claims against all defendants except Lt. Gilbert.

I. CLAIMS

Plaintiff alleges the following facts in support of this civil rights action: For several years before his incarceration, plaintiff received treatment for Lymphoma and Hepatitis C ("HCV") at a Veteran's Hospital. (Docket Entry No.57, page 15). After his conviction in

1

February, 2006 for aggravated assault of a peace officer, plaintiff was incarcerated on the Byrd Unit of TDCJ-CID.[1] While there, plaintiff broke his ankle and injured his shoulder. (Docket Entries No.57, pages 13, 17; No.60, page 5). To facilitate hospital visits, plaintiff was transferred to the Ramsey I Unit, where he was quarantined for other medical reasons. (Docket Entry No.41, page 5). In December, 2006, plaintiff's liver began to fail. (Docket Entry No.60, page 5). Among other treatments, UTMB medical personnel prescribed medication that caused plaintiff to emit an offensive odor. (Docket Entry No.57, page 5). Because of the smell, unnamed inmates threatened plaintiff; consequently, he was twice moved to a single cell.[2] (Docket Entries No.1, page 4; No.6, page 3). Medical and security personnel, however, believed that plaintiff was not taking his medication properly and that he wanted to reside in a single cell. (Docket Entry No.6, page 2). Thereafter, the Assistant Warden and the Head of Security turned a "blind eye" to the problems plaintiff was having as a result of the smell caused by his medication. (*Id.*).

After plaintiff's ankle splint was removed,[3] plaintiff was moved to a cell with an inmate nicknamed "T-Bone." (Docket Entries No.6, page 3; No.60, page 15). Because he was still ill from his shoulder injury, plaintiff stowed his gear and went to sleep. (Docket Entry No.6, page 3; No.60, page 15). The next day, T-Bone informed plaintiff that plaintiff could not be in the cell or watch television until the afternoon. (Docket Entries No.6, page 3; No.60, page 3).

---

[1] Plaintiff was sentenced to six years confinement on February 6, 2006 in a Jackson County, Texas District Court in cause number 03-4-6778. *See* http://168.51.178.33/webapp/TDCJ/InmateDetails.jsp?sidnumber=02854636.

[2] Plaintiff claims that he was moved for security purposes the second time because an inmate three cells down threatened to fight him because of the smell. (Docket Entry No.60, page 5). Plaintiff claims that after an investigation, Assistant Warden Trine and Captain Humphreys made fun of him because of the smell. (*Id.*).

[3] Plaintiff indicates that in February 2007, he received a splint on his right leg, presumably to support his ankle. (Docket Entry No.57, page 22). He claims he did not receive any physical therapy but was forced to walk constantly at the Unit, thus prolonging his injury. (*Id.*).

Plaintiff saw Lt. Rodriguez walk by and told Rodriguez of T-Bone's restrictions regarding cell use and occupancy. (Docket Entry No.6, page 3). Rodriguez then went into the cell and removed T-Bone's property, which T-Bone used to conduct an illegal laundry business. (*Id.*). After Rodriguez left, T-Bone locked plaintiff in the cell with him and began to beat him. (*Id.*). Plaintiff was ill and begged T-Bone to stop by promising to move out of the cell. (Docket Entry No.60, page 3).

Plaintiff left the cell around noon and went to the Security Desk, where he informed correctional officers that he was ill and could not take his medication or rest and that he was being threatened. (Docket Entries No.6, page 3, No.57, page 13). Lt. Rodriguez took no action on plaintiff's complaint and did not initiate a life-endangerment investigation. (Docket Entries No.6 page 4; No.57, page 13.). Around shift change at 6:00 p.m., plaintiff was so weak from hunger and lack of medication that he lay down on the concrete floor. (Docket Entry No.6, page 4). Lt. Gilbert, who had by now come on duty, was informed of plaintiff's problems. (*Id.*). Gilbert went to the shift office. (Docket Entry No.57, page 14). When Gilbert returned, he told plaintiff that the Unit was over-crowded and he could not place him; therefore, plaintiff would have to fight. (*Id.*). Plaintiff asked for a blanket or jacket but Gilbert refused his requests. (Docket Entry No.6, page 4). Every thirty minutes thereafter, Gilbert and the desk clerk returned to the area where plaintiff lay on the floor; they taunted and harassed him. (Docket Entries No.6, page 4; No.57, page 11). From about 9:00 p.m. until 2:00 a.m., Gilbert periodically kicked plaintiff in the side and told him to get up. (Docket Entry No.57, page 11). Plaintiff would stand to avoid disobeying an order. (*Id.*). About 2:00 a.m., Gilbert informed plaintiff that he had talked with T-Bone and there would be no trouble. (*Id.*, page 12). Gilbert further informed plaintiff that a cell had become available on the same wing; Gilbert then placed plaintiff in the

cell with inmate Michell Stewart. (*Id.*). Gilbert did not initiate a life-endangerment investigation to facilitate the move per TDCJ policy. (Docket Entry No.6, page 4).

A rumor spread that T-Bone "punked" plaintiff out of the cell; consequently, everyone gave plaintiff problems. (Docket Entry No.57, page 12). Stewart, plaintiff's new cellmate, also tried "to punk" plaintiff out of the cell in front of the whole wing. (*Id.*). Plaintiff fought Stewart and broke his left thumb at the wrist.[4] (*Id.*). Plaintiff told Nurse Hammon that the official story was that he shut his thumb in a door but in reality, he broke his thumb because Lt. Gilbert told him to fight; plaintiff explained that he had to live there because they were not going to move him. (Docket Entries No.6, page 5; No.57, page 12). Plaintiff was taken to Hospital Galveston for surgery on his broken thumb, where he remained for three days. (Docket Entry No.60, page 9). He returned to the Hospital seven weeks later to have the temporary pins removed. (*Id.*). He was given a disciplinary case for fighting. (*Id.*, page 12).

Plaintiff was refused a single cell because he was not contagious. (Docket Entry No.6, page 5). At a conference with medical and security personnel, plaintiff told Medical Administrator Donaho and Physician's Assistant Fryer[5] that it was only a matter of time before he was injured. (*Id.*).

Shortly thereafter, plaintiff was treated at Hospital Galveston for chest and abdominal pains. He returned to the cell that he shared with inmate Stewart. Because he was ill, plaintiff remained in bed until the next day. (Docket Entry No.57, page 13). Around 3:00 a.m., Stewart attacked plaintiff in his bunk by hitting plaintiff on his head and neck. (*Id.*). Plaintiff

---

[4] Plaintiff indicates that in January, 2007, he broke his left thumb, which required surgery and pins. (Docket Entry No.60, page 6). He was in Hospital Galveston for three days. (*Id.*). The record is unclear as to whether plaintiff broke his thumb before or after he was assaulted by T-Bone and Stewart or if plaintiff has misstated the dates of his injuries.

[5] Plaintiff also refers to Fryer as Nurse Fryer. To simply matters, the Court will refer to Fryer as Physician's Assistant Fryer.

was facing the wall with the covers pulled up; his left thumb was still in a cast. (*Id*.). As Stewart "flailed out," plaintiff rolled over and kicked him away.[6] (*Id*.). Plaintiff broke his ankle again. (*Id*.). Plaintiff required surgery for the break. (Docket Entry No.6, page 5).

Plaintiff was then put back in segregation. (Docket Entry No.6, page 6). While being taken to medical, another officer questioned plaintiff about the events that led to his injury. (*Id*.). When plaintiff started to explain, Lt. Rodriguez attempted to strike plaintiff with the back of his hand but withdrew because there were so many witnesses. (*Id*.).

Plaintiff filed the present suit in early June, 2007, but executed it in late May, 2007. (Docket Entry No.1). He filed a brief in support and a supplement in mid-June, 2007, seeking equitable relief.[7] (Docket Entries No.6, No.7). Plaintiff later sought compensatory damages. (Docket Entry No.56).

In early July, 2007, plaintiff encountered Lt. Gilbert in the hallway as plaintiff left to seek treatment at UTMB.[8] (Docket Entry No.57, page 18). Gilbert harassed him about filing the present suit. (*Id*.). Plaintiff filed a Step 1 Grievance on his way to the hospital. When plaintiff returned from the hospital to the dorm, he saw Gilbert talking to an inmate, known to be

---

[6] The Court takes judicial notice that plaintiff indicated in *Rogers v. Lake*, Civil Action No.3:07cv511 (S.D. Tex.) that he broke his foot when he kicked the steel bed frame. *Id.*, Docket Entry No.41, page 12.

[7] Court records show that plaintiff filed suit in June, 2007. However, in Step 1 Grievance No.2007163741, dated February 27, 2007, plaintiff indicated that he had filed suit in federal court and complained that Ramsey I Unit medical personnel were not providing him with the recommended treatment for his ankle injury. (Docket Entry No.7-2, page 3). He also complained of headaches from receiving a beating while he slept, presumably from inmate Stewart. (*Id*.). In a response dated April 2, 2007, Warden K. Negbenebor indicated that Assistant Medical Administrator Ms. Donaho, reported that Dr. Ward saw plaintiff on February 20, 2007, for his ankle and that a transfer to a medical unit was not medically indicated. (*Id*.). She also reported that plaintiff failed to keep his scheduled appointment on February 28, 2007 and that he would be rescheduled. (*Id*.).

[8] In an unexecuted Step 1 Grievance dated July 9, 2007, plaintiff complained that Gilbert harassed him about life endangerment in the hallway as plaintiff was leaving for the hospital. (Docket Entry No.12, page 1). In another supplement, plaintiff indicated that the grievance was returned unprocessed. (Docket Entry No.14). The grievance was returned because plaintiff did not document an attempt at informal resolution and did not request any relief. (*Id*., page 4).

a bully. (*Id.*). The next morning offender O'Neal pushed plaintiff. (*Id.*). Plaintiff tried to get away, but O'Neal kicked plaintiff on the foot, where he had just had surgery. (*Id.*). Plaintiff and O'Neal fought and plaintiff broke his fourth finger on his right hand. (Docket Entry No.60, page 10). The break could not be fixed. (*Id.*).

Plaintiff received a disciplinary case for fighting.[9] (*Id.*, page 12). Plaintiff appealed all of his disciplinary convictions through the prison grievance system but the appeals were refused.[10] (Docket Entry No.60, page 13).

Sometime during this time, plaintiff also broke the instep of his fourth toe, which required surgery and a thirteen-day stay in Hospital Galveston. (Docket Entry No.60, page 9). His shoulder also gave him more problems. (*Id.*).

Plaintiff further claims his treatment plan provided that he would be considered for Interferon treatment if his liver condition improved within six months. (*Id.*). Plaintiff claims that in late July, 2007, after he received two cases for fighting, Physician's Assistant Fryer told him that he would not receive the Interferon treatment.[11] (*Id.*).

---

[9] In a supplement, plaintiff indicates that Captain Humphrey found him guilty of fighting O'Neal, and sentenced him to segregation, solitary confinement, forfeiture of good conduct time, recreation and commissary restrictions, and a transfer to another unit. (Docket Entry No.18).

Plaintiff also received a disciplinary case on June 15, 2007 for cursing at an officer and refusing to get up. (Docket Entry No.60, page 12).

[10] In Step 2 Grievance No. 2007193112, plaintiff appealed his disciplinary conviction for fighting O'Neal. (Docket Entry No.32, page 7). Kelli Ward, Assistant Administrator responded that major disciplinary case #20070320989 had been reviewed and that the verdict was supported by a preponderance of the evidence. (*Id.*, page 9).

[11] In a letter-supplement dated July 27, 2007, plaintiff indicates that Nurse Fryer told him that he could not get Interferon treatment for his liver disease because of the disciplinary cases for fighting. (Docket Entry No.27). Plaintiff also indicates that he was being transferred to another unit. (*Id.*).

In a motion, dated August 6, 2007, plaintiff claims that Fryer denied him the medical treatment that he waited six months to begin to see if his liver improved. (Docket Entry No.20, page 5).

6

Plaintiff maintains that treatment for his shoulder was also delayed. (*Id.*, page 7). Plaintiff contends that every time he brought up treatment for his shoulder, he was informed that UTMB had allocated only so much time and money for medical care to each unit. (*Id.*). Therefore, medical personnel could not determine the treatment plaintiff needed for his shoulder even though an orthopedic specialist had said that he needed surgery to fix the shoulder. (*Id.*). Later, Medical Administrator Donaho found, in response to plaintiff's Step 1 Grievance, that Nurse Hendricks made false and misleading statements about plaintiff's shoulder[12] to UTMB personnel. (*Id.*, page 8). Plaintiff indicates that he did not receive physical therapy even though he requested the same. (*Id.*). He did, however, receive anti-inflammatory medication for his shoulder. (*Id.*).

Plaintiff was transferred to the Wayne Scott/Retrieve Unit around August 6, 2007. (Docket Entry No.23).

Liberally construing plaintiff's pleadings, the Court has determined that he seeks relief from defendants on the following claims:

1. Plaintiff's Eighth Amendment rights were violated by the practices and procedures of security and medical personnel on the Ramsey Unit, which resulted in several injuries to plaintiff;

2. Nurse Hendricks violated plaintiff's right to medical treatment by giving false information to a UTMB physician that plaintiff had not submitted sick call requests about his shoulder;

---

[12] In a supplement, plaintiff explains that he sought a follow-up appointment with an orthopedic surgeon in Galveston about his shoulder. (Docket Entry No.10, page 1). When he attempted to schedule the appointment, he was told to leave. (*Id.*). Plaintiff overheard Nurse Hendricks tell the Galveston doctor that plaintiff had not ever put in a sick call on his shoulder, which was a lie. (*Id.*). Plaintiff filed Step 1 Grievance No.2007174412, dated June 21, 2007, informing TDCJ personnel that he overheard Hendricks lie to the UTMB doctor. (Docket Entry No.32). Warden K. Negbenebor responded on July 25, 2007 that plaintiff was correct about his sick call requests and that his shoulder injury was being addressed. Negbenebor indicated that plaintiff was seen on July 9, 2007, and physical therapy was ordered. (*Id.*). Negbenebor further indicated that Nurse Hendricks's behavior would be "pointedly" addressed. (*Id.*, page 3). The response to Step 2 grievance reflects that medical staff addressed plaintiff's shoulder injury with pain medication. (*Id.*, page 6). Plaintiff was scheduled to see a specialist during the first two weeks of August, 2007, and a nerve specialist in March, 2008. (*Id.*).

7

3. Physician's Assistant Fryer violated plaintiff's right to medical treatment for his liver condition by telling plaintiff that he was no longer eligible to receive the medication needed to treat his condition;

4. Lt. Rodriguez failed to protect plaintiff in an appropriate manner after plaintiff complained about T-Bone's attempt to exclude plaintiff from their cell and failed to assist plaintiff after he complained that he had been threatened;

5. UTMB medical personnel on the Ramsey I Unit failed to recommend different housing to stop plaintiff's problems with other inmates. Medical Administrator Donaho failed to protect plaintiff after she was informed of plaintiff's life-endangerment problems and agreed that eventually he would get hurt. Donaho did not acknowledge that plaintiff was shunned because of his medical problems and refused to recommend different housing because plaintiff was not contagious;

6. Lt. Gilbert violated plaintiff's Eighth Amendment rights by harassing and kicking plaintiff, by moving plaintiff to a new cell with another offender without filing a life-endangerment form, and by telling plaintiff that he would have to fight, thereby causing plaintiff to be injured in a fight with his cellmate.

7. Lt. Gilbert retaliated against plaintiff for exercising his right to access the courts by encouraging another inmate to fight plaintiff.

(Docket Entries No.1, No. No.57).

Plaintiff also seeks an order transferring him to a medical unit and an order directing TDCJ and UTMB to change their medical policies. (Docket Entry No.6). He would like the employment of Lt. Rodriguez and Lt. Gilbert to be terminated and a guarantee that he would receive medical insurance for life to cover treatment for his injuries. (*Id*.). Plaintiff also seeks an order that his disciplinary record be cleared and an order reinstating his security classification. (*Id*.).

## II. MOTIONS

Plaintiff has flooded the Court with motions and documents, many of which are plaintiff's attempts to amend or supplement his original complaint. Plaintiff's many motions to

amend his complaint fail to sufficiently incorporate the allegations raised in his original complaint and his more definite statements.  A party may abandon a claim if the party fails to sufficiently incorporate, attach, or re-allege the claim in an amended pleading.  *See e.g.,* FED. R. CIV. P. 10(c) (providing that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion.  A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes").  *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) (holding "an amended complaint ordinarily supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading").  The Court, however, is mindful that pleadings prepared by prisoners who do not have access to counsel must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court is also mindful that *pro se* litigants are not exempt from complying with the relevant procedural rules and substantive law.  *Hulsey v. State*, 929 F.2d 168, 171 (5th Cir. 1991).  Dismissal of a *pro se* litigant's action is proper when he engages in a clear pattern of delay or disregards a court rule or order.  *Id.* at 171.  Plaintiff has clearly disregarded the procedural rules with respect to his motions to amend.  Therefore, to the extent that plaintiff seeks to amend his complaint, plaintiff's motions to amend are DENIED.

        Under Rule 15(d) of the Federal Rules of Civil Procedure, a district court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.  *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998).  A supplemental pleading may bring in new claims and parties when the subsequent events alleged stem from original cause of action.  *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 226-27 (1964).  While plaintiff may claim that his pleadings show a continuous violation of his rights by medical and prison personnel on three

units, he states no facts to show that his claims against personnel on the Wayne Scott/Retrieve or the Darrington Units of TDCJ stem from the pending cause of action. Moreover, plaintiff has a suit pending against personnel at the Wayne Scott/Retrieve Unit. *See Rogers v. Lake*, Civil Action No.3:07cv330 (S.D. Tex.). Therefore, to the extent that plaintiff's motions to amend may be construed as motions to supplement, such motions are DENIED.

Finally, because in Civil Action No.3:07cv330, plaintiff seeks relief from two parties who bear no connection to the parties or claims in the pending cause of action, the Court DENIES plaintiff's requests to consolidate such cases.

### III. DISCUSSION

This civil rights action is governed by the Prison Litigation Reform Act ("PLRA"). Because plaintiff is a prisoner who proceeds *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of the complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 42 U.S.C. 28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997(e)(c) and 28 U.S.C. § 1915A(b). In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it. *Haines*, 404 U.S. 519; *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not

exist." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (citing *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)).

A. Failure to Protect

To establish a failure-to-protect claim under 42 U.S.C. § 1983, a prisoner must show that he has been incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995). To act with deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Only deliberate indifference will suffice to state a failure-to-protect claim; mere negligence is not sufficient. *See id.*; *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983).

1. Lt. Rodriguez

Plaintiff contends that Lt. Rodriguez failed to protect him from T-Bone by confiscating T-Bone's illegal laundry materials and leaving plaintiff in the cell with T-Bone. He further contends that Rodriguez failed to protect him after T-Bone beat him and plaintiff left his cell. Plaintiff claims that Rodriguez ignored his requests to be moved to different housing and failed to file a life-endangerment form.

Plaintiff's pleadings do not show that Rodriguez was aware that plaintiff faced a substantial risk of serious harm because Rodriguez removed T-Bone's illegal property from the cell or because plaintiff reported T-Bone's cell policy to Rodriguez. Plaintiff does not state that T-Bone threatened to harm him if plaintiff returned to the cell or if he reported the assault to

11

security officers. Plaintiff alleges that he told the officers at the security desk that he could not take his medicine or rest and that he was being threatened to fight. Furthermore, plaintiff's pleadings do not show that plaintiff suffered substantial harm because Rodriguez took no action during his shift.

Moreover, Rodriguez's alleged failure to follow TDCJ policy and procedures in conducting an investigation of plaintiff's assault claims on the Ramsey I Unit does not violate plaintiff's right to due process. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (finding "prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met"). Likewise, plaintiff's allegation that Lt. Rodriguez's threatened to backhand plaintiff further fails to rise to a constitutional violation. The threats and gestures of a custodial officer, without a physical assault, do not amount to a constitutional violation even if true. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *see also Petta v. Rivera*, 143 F.3d 895, 904 (5th Cir. 1999). Accordingly, plaintiff's Eighth and Fourteenth Amendment claims against Rodriguez are subject to dismissal as legally frivolous.

<u>2. Administrator Donaho</u>

Plaintiff also contends that he informed Administrator Donaho that his life was in danger from other inmates who were offended by the smell that he emitted as a result of the prescribed medication. He claims that Donaho agreed that eventually he would get hurt. Plaintiff complains, however, that Donaho and other medical personnel did not acknowledge that he was shunned because of his medical problems and that Donaho refused to recommend different housing because plaintiff's medical conditions were not contagious.

Plaintiff's general dissatisfaction with Donaho and other Ramsey I medical providers and administrators, including Captain Humphrey and the Assistant Warden, rises only to the level of negligence, if anything, and is not sufficient to state a failure-to-protect claim. *See Farmer*, 511 U.S. at 837; *see also Neals*, 59 F.3d at 533 (concluding that allegations amounting to a claim of negligence in the failure-to-protect context did not raise a non-frivolous constitutional claim); *Oliver*, 914 F.2d at 60 (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983). Plaintiff's pleadings show that medical and administrative personnel thought that plaintiff complained of life-endangerment because he wanted a single cell or a medical transfer and that he was not taking his medication as prescribed. While plaintiff may have informed Donaho and others of his problems with other inmates because of the offensive odor and they may have agreed with him that over time he might get hurt, he fails to state any facts that would show that they were deliberately indifferent to the possibility of substantial danger to his safety. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) (holding that a violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's . . . safety").

## B. Medical Care

The Eighth Amendment's prohibition against cruel and unusual punishment also forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas*

13

*County*, 286 F.3d 257, 262 (5th Cir. 2002). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* Mere negligence does not constitute a section 1983 cause of action. *Estelle*, 429 U.S. at 106; *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a ... failure to act reasonably").

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

### 1. Nurse Hendricks

Plaintiff's pleadings show that Nurse Hendricks delayed plaintiff's medical treatment for his shoulder by misstating to UTMB personnel that plaintiff had not submitted sick call requests or complained about shoulder pain. Plaintiff does not allege, and his pleadings do not show, that he suffered substantial harm to his shoulder as a result of any delay in treatment attributable to Nurse Hendricks's misstatement. Plaintiff's pleadings show that he was scheduled for an appointment soon thereafter with specialists to treat his shoulder injury. (Docket Entries No.32, page 7; No.37, pages 3-4, 8). Accordingly, plaintiff's Eighth Amendment claim against Nurse Hendricks is without legal merit and is subject to dismissal.

## 2. Physician's Assistant Fryer

Plaintiff's pleadings do not reflect that Physician's Assistant Fryer was deliberately indifferent to plaintiff's need for Interferon treatment. Plaintiff's pleadings show that Fryer told plaintiff shortly before he was transferred to the Wayne Scott/Retrieve Unit that he could not get Interferon treatment because he was now assigned to "transit status" because of his disciplinary cases. (Docket Entry No.64, pages 5-6). In a Step One Grievance, dated November 29, 2007, plaintiff complained that he could not get Interferon treatment until he was assigned to a permanent unit. (*Id.*). Moreover, plaintiff's pleadings do not show that Fryer denied plaintiff treatment or that she was authorized to deny such treatment; instead, his pleadings show that Fryer merely informed plaintiff about his ineligibility to receive such treatment.

Accordingly, plaintiff's claims against Physician's Assistant Fryer are subject to dismissal.

## C. Immunity

Plaintiff's claims against TDCJ and UTMB must also fail. TDCJ and UTMB are state agencies and have no separate legal existence. *See generally Darby v. Pasadena Police Department*, 939 F.2d 311, 313 (5th Cir. 1991). To the extent that plaintiff sues TDCJ and UTMB, his suit is in effect against the State of Texas. A lawsuit against a state agency is barred by the doctrine of sovereign immunity, whether the movant seeks damages or injunctive relief. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02 (1984); *McCarthy ex rel. Travis v. Hawkins*, 381 F3d 407, 418 (5th Cir. 2004). Because this suit was filed directly against a state agency, it was filed against the State in its own name; therefore, such suit is barred by the doctrine of sovereign immunity. *See Alabama v. Pugh*, 438 U.S. 781 (1978); *Delahoussaye v.*

15

*City of New Iberia*, 937 F.2d 144, 146-49 (5th Cir. 1991).  Therefore, TDCJ and UTMB are not subject to suit in federal court in this case and plaintiff's claims against TDCJ and UTMB are subject to dismissal.

### D. Disciplinary Cases

"[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated."  *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)); *Clarke v. Stalder*, 154 F.3d 186 (5th Cir. 1998) (finding favorable ruling on request for injunctive relief would necessarily imply the invalidity of loss of good-time credits).  This principle applies not only when the prisoner challenges the judgment as a substantive matter but also when he challenges "procedures . . . such as necessarily to imply the invalidity of the judgment."  *Edwards*, 520 U.S. at 645.  A conviction for purposes of *Heck* includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits.  *Id.* at 641.  Expunction of a conviction from a prison disciplinary proceeding, by its very nature, implies the invalidity of the conviction.  Without proof that the conviction has been invalidated, plaintiff's request for expunction of the disciplinary cases and restoration of his security classification are not cognizable in this civil rights action.

### E. Injunctive Relief

Plaintiff's requests for an order directing TDCJ officials to transfer him to a medical unit, to provide life-time insurance coverage for his medical needs, and to terminate the employment of Lt. Rodriguez and Lt. Gilbert are further DENIED.  Injunctive relief in the form

of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). Plaintiff's pleadings do not show that he will prevail on the merits of his claims or that equitable relief in appropriate in all other respects. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004).

Plaintiff's request for an order directing TDCJ and UTMB to change their medical policies is also DENIED. Plaintiff fails to cite to a specific policy that violates federal law or the United States Constitution and to allege any specific facts in support of such claim.

### F. Remaining Claims

Plaintiff alleges cognizable Eighth Amendment claims against Lt. Gilbert for failure to protect, denial of medical care, and excessive force. He also alleges a cognizable First Amendment retaliation claim against Gilbert. Therefore, plaintiff claims against Lt. Gilbert will be retained.

### IV. CONCLUSION

Based on the foregoing, the Court ENTERS the following ORDERS:

1. Plaintiff's claims against all defendants, except Lt. Gilbert are DISMISSED WITH PREJUDICE as legally frivolous. All claims against Lt. Gilbert are RETAINED. Plaintiff's requests for compensatory and equitable relief against all defendants except Lt. Gilbert are DENIED.

2. All pending motions are DENIED. Plaintiff is ORDERED <u>not</u> to file any additional declarations, affidavits, supplements, and so forth unless so instructed to do so by the Court. Plaintiff is further ORDERED <u>not</u> to file any motion without express authorization from the Court. Plaintiff is cautioned that all documents and pleadings filed without express authorization from the Court will be STRICKEN.

The Clerk will provide a copy of this order by facsimile transmission, regular mail, or e-mail to the parties and to the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box

13084, Austin, Texas, 78711, Fax: 512-936-2159; the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793, and the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-strikes List.

SIGNED at Houston, Texas, this 3rd day of November, 2008.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE