IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CARLETON W. ROGERS, | § | |
| TDCJ-CID NO.1348848, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION G-07-330 |
| TDC, *et al.,* | § | |
| Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff Carleton W. Rogers, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint pursuant to 42 U.S.C. §1983, seeking equitable relief on grounds that the Texas Department of Criminal Justice ("TDCJ"), medical personnel employed at the Ramsey I Unit by the University of Texas Medical Branch ("UTMB"), Lt. R.J. Gilbert, and Lt. E. Rodriguez violated his constitutional rights. *Rogers v. TDC*, Civil Action No.4:07cv1909 (S.D. Tex. June 22, 2007) (Docket Entries No.1, No.6). In mid-June, 2007, Houston District Judge Sim Lake ordered the case transferred to the United States District Court in Galveston, Texas. *Id.*, Docket Entry No.8. The case was transferred and assigned the present number. Pursuant to General Order No.2007-10, the case was reassigned to United States District Judge Melinda Harmon. (Docket Entry No.43).

Plaintiff filed two responses to the Court's Order for More Definite Statement, entered January 10, 2008. (Docket Entries No.57, No.60). On November 3, 2008, the Court dismissed plaintiff's claims against all defendants except for his First and Eighth Amendment claims against Lt. Gilbert. (Docket Entry No.119). Pending is defendant Lt. R. J. Gilbert's motion for summary judgment and various non-dispositive motions. For the reasons to follow,

the Court will grant defendant Gilbert's summary judgment motion and dismiss this action with prejudice.

## I. CLAIMS

The facts upon which plaintiff filed this civil rights action are fully stated in the Court's Order of June 16, 2009 (Docket Entry No.147), and the Opinion on Partial Dismissal, entered November 3, 2008.  (Docket Entry No.119).  For this reason, the Court will only restate the facts alleged when necessary to the disposition of the pending claims.

Liberally construing plaintiff's pleadings, the Court has determined that he seeks relief from defendant Gilbert on the following claims:

    1.    Lt. Gilbert violated plaintiff's Eighth Amendment rights by

        a.  Harassing and kicking plaintiff while he lay on the floor for hours after the altercation with T-Bone;

        b.  Refusing to call medical staff to take care of plaintiff's medical needs, including the dispensation of his medication;

        c.  Moving plaintiff to a new cell with another offender without filing a life-endangerment form and without following TDCJ-CID procedures; and,

        d.  Advising plaintiff to fight inmates who threatened him.

    2.    Lt. Gilbert retaliated against plaintiff for exercising his right to access the courts by encouraging another inmate to fight plaintiff.

(Docket Entries No.1, No.57).

Defendant Gilbert moves for summary judgment on grounds that plaintiff did not exhaust his administrative remedies and alternatively, that his claims are without merit.  (Docket Entry No.149).  Gilbert also asserts Eleventh Amendment immunity and qualified immunity. (*Id*.).  Plaintiff has filed a response to the motion.  (Docket Entry No.148).

## II. DISCUSSION

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### A. Eleventh Amendment

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Under the Eleventh Amendment, an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993). This bar remains in effect when state officials are sued for damages in their official capacity. *Cory v. White,* 457 U.S. 85, 89 (1982). To the extent plaintiff sues defendant Gilbert for monetary damages in his official capacity as an employee of TDCJ-CID, plaintiff's claims are barred by the Eleventh Amendment.

B. Qualified Immunity

Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), *overruled in part by Pearson v. Callahan*, 129 S.Ct. 808, 813 (2009). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry. *Id.* at 323.

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818. If plaintiff fails to rebut either prong, the Court's analysis ends. *See Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).

Defendant Gilbert alleges that plaintiff's claims are unexhausted and alternatively, he is entitled to qualified immunity because he did not violate plaintiff's constitutional rights. (Docket Entry No.149).

1. Eighth Amendment Claims

Plaintiff claims that he was moved from protective segregation to 6 Wing, 1-6 in January or February, 2007.  (Docket Entry No.6, page 3).  Plaintiff claims that the day after the move, his new cell-mate threatened him after a correctional officer harassed the cell-mate about his illegal laundry business.  (*Id*.).  Thereafter, plaintiff and his cell-mate fought until plaintiff agreed to move out.  (Docket Entries No.6, page 3; No.57, page 10).  Feeling ill and with nowhere to go, plaintiff sought help from officers at the security desk but to no avail.  (*Id*.).  At shift change, plaintiff informed Lt. Gilbert that he was ill, that he could not take his medications, and that he was being threatened.  (Docket Entries No.6, page 4; No.57, page 11).  Plaintiff claims that from 9:00 p.m. until 2:00 a.m., Gilbert taunted, harassed, and kicked him in the side; Gilbert also ordered him to get up off the concrete floor, where plaintiff lay in pain.  (Docket Entry No.57, page 11).  Plaintiff alleges that Gilbert did not give him a blanket, a coat, food or drink, and did not take him to the infirmary.  (*Id*.).  However, around 2:00 a.m., Gilbert informed plaintiff that he had talked with the cell-mate and there would be no trouble; Gilbert then moved plaintiff from cell 6-1-6B to 6-1-8B, but he did not initiate a life-endangerment investigation. (Docket Entry No.6, page 4).

TDCJ records reflect that on January 7, 2007, Lt. Gilbert submitted an Inter-Office Communications memorandum to the Unit Classification Manager, in which he indicated that at 1:00 a.m. on January 7, 2007, plaintiff was moved from 6-1-6B to 6-1-8B on an emergency basis for safety and security "to prevent a potential problem between cellmates." (Docket Entry No. 149-2, page 16).  A month later, on February 18, 2007, plaintiff was moved from 6-1-8B to prehearing detention following a physical altercation with his cell-mate Michael Stewart.  (*Id.*, page 15).  Plaintiff stated in Step 2 Grievance No.2007100354, dated March 8,

2007, that he had experienced problems with his last three cell-mates; plaintiff claimed his second cell-mate was an "SSI who was selling bleach and toilet paper and running a laundry service and told me I couldn't stay in cell during the day.  He worked nights, also that he need[ed] my bunk to do laundry on!"[1]  (Docket Entry No.149-5, page 18).  Plaintiff claimed in the same grievance that security was telling him to fight and not moving him off 6 wing after the last three incidents was wrong.  (*Id.*).

Unit Classification Committee Hearing records show that an offender protection investigation review was conducted on May 22, 2006, October 27, 2006, and November 21, 2006.  (Docket Entry No.149-2, page 3).  A review was also conducted on March 1, 2007, and July 23, 2007, following major disciplinary cases.  (*Id.*, pages 3-4).  No review was conducted after the January 7, 2007, move.

Plaintiff's medical records show that plaintiff received medical treatment at University of Texas Medical Branch Hospital ("UTMB") following the January 7, 2007 move to the new cell.  Plaintiff was seen at UTMB from January 10-12, 2007, for a colonoscopy.  (Docket Entries No.142-4, pages 29-32; No.142-5).  He was seen in the Unit infirmary on January 17, 2007, for a displaced metacarpal, following an altercation on the same day.[2]  (Docket Entry No.149-5, pages 10-11).  He was seen at UTMB on January 19, 2007, for a hand injury after he

---

[1] Plaintiff did not mention his cell-mates in Step 1 Grievance No.2007100354.  (Docket Entry No.149-5, pages 16-17).

[2] Plaintiff alleges that a rumor spread that the cell-mate "punked" plaintiff out of the cell; consequently, everyone gave plaintiff problems.  (Docket Entry No.57, page 12).  Plaintiff claims that his new cellmate also tried "to punk" plaintiff out of the cell in front of the whole wing.  (*Id.*).  Plaintiff fought the cell-mate on February 8, 2007, and broke his left thumb at the wrist.  (*Id.*).  Plaintiff states that he told Nurse Hammon that the official story was that he shut his thumb in a door but in reality, he broke his thumb because Lt. Gilbert told him to fight; plaintiff explained that he had to live there because they were not going to move him.  (Docket Entries No.6, page 5; No.57, page 12).  Plaintiff was taken to Hospital Galveston for surgery on his broken thumb, where he remained for three days.  (Docket Entry No.60, page 9).  He returned to the Hospital seven weeks later to have the temporary pins removed.  (*Id.*).  Plaintiff claims that he received a disciplinary case for fighting on February 8, 2007 (Docket Entry No.60, page 12), but the record does not support that claim.

6

caught his hand in a door and fell on the hand on January 17, 2007.  (Docket Entries No.142-4, page 26, No.142-7, pages 14-32; No.142-8).  He was hospitalized for surgery on his thumb until January 23, 2007.  (Docket Entry No.142-9; No.142-7, page 21).

The record reflects that from August 2006, to January 2009, forty-three unprocessed grievances were returned to plaintiff because he did not follow the proper grievance procedures.  (Docket Entry No.149-5, page 2).  The record is void of grievances related to the January 7, 2007, move or to Lt. Gilbert's failure to initiate a life-endangerment investigation, his failure to provide plaintiff with medical care, food, water, or clothing, his advice to plaintiff to fight other inmates, and the force used by Gilbert while plaintiff lay on the concrete floor in pain. Moreover, the record reflects no complaints to medical personnel about any physical injury that plaintiff suffered as a result of Lt. Gilbert's alleged actions.  For this reason, defendant Gilbert contends that plaintiff's Eighth Amendment claims should be dismissed for non-exhaustion. (Docket Entry No.149).

Section 1997(e) of 42 United States Code, as amended by the Prison Litigation Reform Act, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e); *Booth v. Churner*, 532 U.S. 731 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Unexhausted claims are subject to dismissal if brought in federal court.  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006) (holding that PLRA exhaustion

requirement requires "proper exhaustion" through strict compliance with the time limits set forth in the procedural rules governing grievances before filing suit).  Consistent with Supreme Court precedent, the Fifth Circuit has also mandated that a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions.  *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

TDCJ-CID currently provides for a two-step grievance procedure for presenting administrative grievances.  *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999).  A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.  *Id.*

Plaintiff presents nothing to contravene the record, which shows that he did not grieve Gilbert's alleged actions.  Therefore, plaintiff's Eighth Amendment claims against Lt. Gilbert are subject to dismissal for failure to exhaust available administrative remedies. Accordingly, defendant Gilbert is entitled to summary judgment on this ground.

## 2. First Amendment Claims

Plaintiff claims that Lt. Gilbert retaliated against him for filing the present case by encouraging or inducing another inmate to fight plaintiff.  (Docket Entry No.21).  In late May 2007, plaintiff executed the pending suit and filed it in federal court in June 2007.  (Docket Entry No.1).  Plaintiff claims that around 2:30 a.m., on July 10, 2007,[3] he encountered Lt. Gilbert in the hallway as plaintiff left to seek treatment at UTMB.  (Docket Entry No.57, page 18). Plaintiff contends that Gilbert harassed him about filing the present suit.  (*Id.*).  In an unexecuted Step 1 Grievance dated July 9, 2007, which plaintiff contends he filed on his way to the hospital, plaintiff complained that Gilbert harassed him about life endangerment in the hallway as plaintiff

---

[3] The record is unclear as to exactly when plaintiff encountered Lt. Gilbert.

was leaving for the hospital. (Docket Entries No.12, page 1; No.149-8, pages 7-8). The grievance was returned unprocessed on July 9, 2007, because plaintiff did not document an attempt at informal resolution and did not request any relief. (Docket Entries No.14, page 4; No.149-8, page 8).

Plaintiff, nevertheless, alleges that upon his return from the hospital to the dorm, he saw Lt. Gilbert talking to inmate O'Neal. (Docket Entries No.21; No.57, page 18). Plaintiff claims the next morning offender O'Neal pushed him. (*Id.*). Plaintiff states that he tried to get away, but O'Neal kicked plaintiff on his injured foot. (*Id.*). Plaintiff and O'Neal fought and plaintiff broke his fourth finger on his right hand. (Docket Entry No.60, page 10).

Plaintiff received a disciplinary case for fighting O'Neal on July 10, 2007. (Docket Entry No.60, page 12). Plaintiff appealed the disciplinary conviction through the prison grievance system. (Docket Entries No.32, page 7; No.60, page 13). In Step 1 Grievance 2007193112, dated July 21, 2007, plaintiff stated that upon his return to the dorm, he saw Lt. Gilbert leaving the area where inmate O'Neal and plaintiff lived. (Docket Entry No.149-8, page 13). Plaintiff claimed within five minutes of Gilbert's departure, the inmates were smoking. (*Id.*). Plaintiff stated that the next morning he sat on a bench in the TV room; inmate O'Neal put his hands on plaintiff and told him that the seat was his. (*Id.*). Plaintiff stated that he moved down the bench and O'Neal began to curse and threaten him. (*Id.*). Plaintiff claimed he attempted to leave and told O'Neal that he did not want any trouble but O'Neal blocked his path and kicked him on his injured ankle. (*Id.*). Plaintiff hit O'Neal and O'Neal fell and cut his face. (*Id.*, page 14). Plaintiff stated that O'Neal had been harassing people all week. (*Id.*). Plaintiff claimed that he had not had any trouble on the dorm or with O'Neal until Gilbert harassed him about the lawsuit as he left for the hospital and was present in plaintiff's living area when

plaintiff returned from the hospital.  (*Id.*).  Plaintiff further claimed that "O'Neal was making remarks about seg and racial [sic] as of Lt. Gilbert's abuse to me that gave cause for the law suit."  (*Id.*).  The disciplinary conviction was upheld.  (*Id.*).

In Step Two Grievance No.2007193112, plaintiff complained again that he had attempted to avoid a confrontation with O'Neal and that O'Neal's actions "came out of the blue." (*Id.*, page 10).  Plaintiff again alleged that Lt. Gilbert was involved in the events leading up to the altercation because he harassed plaintiff before he left for the hospital and was present on the wing when plaintiff returned.  (*Id.*, page 11).  The grievance was denied on grounds that the disciplinary conviction and punishment were appropriate.[4]  (*Id.*, page 12).

The record reflects no evidence that TDCJ officials investigated plaintiff's claims against Lt. Gilbert.  Nevertheless, plaintiff presented such claims to prison authorities in his grievances; therefore, he exhausted his administrative remedies with respect to such claim. Accordingly, the Court will address defendant Gilbert's alternative argument that he is entitled to qualified immunity because he did not violate plaintiff's constitutional rights.

Claims of retaliation generally flow from protections provided by the First Amendment.  A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998), or for complaining through proper channels about a guard's misconduct.  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995)).  Claims of retaliation from prison inmates, however, are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions.  *Woods,* 60 F.3d at

---

[4] Plaintiff was transferred to another TDCJ unit.  (Docket Entry No.37, page 23).  He filed a Step 1 grievance on July 21, 2007, complaining that he was given two cases for fighting and in both cases he was defending himself. (*Id.*).  The grievance was returned unprocessed because he submitted more than one in seven days.  (*Id.*, page 24).

1166.  To prevail on a claim of retaliation a prisoner must establish the following elements: (1) the violation of a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *Morris*, 449 F.3d at 684; *Jones v. Greninger,* 188 F.3d 322, 324-25 (5th Cir. 1999).  If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law.  *Tighe v. Wall,* 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods,* 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right").  Further, the inmate must allege more than his personal belief that he is the victim of retaliation.  *Jones,* 188 F.3d at 325.  To demonstrate the requisite retaliatory intent on the defendant's part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred.  *Woods,* 60 F.3d at 1166.

Plaintiff contends that Lt. Gilbert retaliated against him for filing the pending suit by inducing inmate O'Neal to engage in an altercation with plaintiff.  Plaintiff bases this contention on Gilbert's alleged harassment as plaintiff left for the hospital, his presence on the wing in an area where plaintiff later saw O'Neal and other inmates smoking, and plaintiff's relationship with O'Neal before he left for the hospital.

Plaintiff's contention is speculative.  The temporal proximity of Gilbert's alleged harassment and his presence on the wing the day before the altercation does not give rise to an inference that Gilbert intended to retaliate against plaintiff for filing suit or that he induced O'Neal to fight plaintiff.  *See Tampa Times Co. v. National Labor Relations Board,* 193 F.2d 582 (5th Cir. 1952) (noting that the mere fact that one incident precedes another is not proof of a causal connection).  Nor did Gilbert violate the Constitution by verbally harassing plaintiff or by

11

being present on the wing the day before the altercation.  *See Siglar v. Hightower*, 112 F.3d 191,

193 (5th Cir. 1997) (finding verbal harassment or abuse alone does not amount to a constitutional

violation).  To the extent that plaintiff claims that Gilbert induced O'Neal to initiate an assault by

allowing him and others to smoke, plaintiff states no facts to support such claim and the record is

void of facts to support the same.  With respect to plaintiff's relationship to O'Neal, the Court

notes that plaintiff emphatically stated in his Step 1 Grievance that O'Neal had been harassing

people all week.  (Docket Entry No.149-8, page 14).

Conclusory allegations of retaliation, such as the one advanced by plaintiff, are

not sufficient to support a claim under § 1983.  Defendant Gilbert is, therefore, entitled to

summary judgment on the affirmative defense of qualified immunity.

## IV. CONCLUSION

Based on the foregoing, the Court ENTERS the following ORDERS:

1.  Plaintiff's motions for entry of a default against defendant Gilbert
    under Rule 55 of the Federal Rules of Civil Procedure and for
    authorization to move for default against Assistant Attorney
    General Nadine Phillpotts (Docket Entries No.150, No.153) are not
    actionable.  Defendant Gilbert has answered and has presented a
    defense; therefore, plaintiff's motions for entry of a default
    (Docket Entries No.150, No.153) are DENIED.

2.  Plaintiff's "Motion for Discovery, Production and Inspection of
    Evidence," which he claims is necessary to prepare for trial
    (Docket Entry No.151), is DENIED.  Plaintiff fails to show that
    additional discovery is necessary at this time.

3.  Plaintiff's motion for leave to amend "2nd summary judgment and
    enter 'evidence'" (Docket Entry No.154) is DENIED.  Plaintiff
    does not show how the evidence attached to his motion rebuts
    defendant Gilbert's summary judgment proof or in any way
    supports his pending claims.

4.  Plaintiff's motion for leave to seek further clarification the Court's
    Order of June 16, 2009, denying defendant Gilbert's motion for

summary judgment and ordering defendant to file a renewed motion or an advisory (Docket Entry No.156) is DENIED.

5.     Plaintiff's motion for an extension of the statute of limitations for filing an appeal in Civil Action No. 3:07cv00511 (Docket Entry No.157) is DISMISSED. The Court observes that such motion was denied in Civil Action No.3:07cv00511 on November 30, 2009. *Rogers v. Lake*, Civil Action No.3:07cv00511 (S.D. Tex. Feb.23, 2009) (Docket Entry No.104).

6.     Defendant's motion to strike plaintiff's motion and enter up-dated evidence of retaliation and denied medical care (Docket Entry No.160) is GRANTED. Plaintiff's "up-dated evidence of retaliation and denied medical care," which is attached to his motion (Docket Entry No.159) is not pertinent to the issues in the pending case. Accordingly, the Court ORDERS plaintiff's motion for authorization to enter updated evidence of retaliation and denied medical care (Docket Entry No.159) be STRICKEN from the docket.

7.     Defendant Gilbert's motion for summary judgment (Docket Entry No.149) is GRANTED. All claims against defendant Lt. Gilbert are DISMISSED WITH PREJUDICE. All requests for relief are DENIED.

8.     All other pending motions, if any, are DENIED.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, this 2nd day of March, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

13